IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEAN WAYNE PIERCE, | No. C-04-3255 MMC (PR) |
| Petitioner, | **ORDER GRANTING RESPONDENT'S MOTION TO DISMISS** |
| v. | |
| EDWARD S. ALAMEIDA, | **(Docket No. 11)** |
| Respondent. | |

Petitioner is a California prisoner who filed this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondent has filed a motion to dismiss the petition as untimely; petitioner filed a "statement of non-opposition,"[1] to which respondent has filed a reply.

**BACKGROUND**

In 1994, a jury in Contra Costa Superior Court convicted petitioner of first degree murder, with various enhancements, and petitioner was sentenced to a term of imprisonment of twenty-five years to life plus an additional term of ten years to be served consecutively. On

---

[1] By such filing, petitioner essentially argues that the Court should deem his petition unopposed by respondent, on the ground respondent did not address certain issues.

November 30, 1995, the California Court of Appeal affirmed the conviction, and on March 16, 1996, the Supreme Court of California denied the petition for review. On December 31, 1996, petitioner filed a federal habeas petition in this district, which was dismissed without prejudice on March 11, 1997, for failure to exhaust state remedies. On November 17, 1997, petitioner filed a habeas petition in the Superior Court, which was denied. Five and a half years later, on May 5, 2003, petitioner filed a habeas petition in the California Court of Appeal, which was denied on May 8, 2003. Petitioner thereafter filed another habeas petition in the Superior Court, which was denied on June 6, 2003. On July 1, 2003, petitioner filed another habeas petition in the California Court of Appeal, which was denied on July 10, 2003. On August 25, 2003, petitioner filed a habeas petition in the Supreme Court of California, which was denied on May 12, 2004. Petitioner thereafter filed the instant petition.

## DISCUSSION

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") became law on April 24, 1996, and imposed for the first time a statute of limitations on petitions for a writ of habeas corpus filed by state prisoners. Petitions filed by prisoners challenging non-capital state convictions or sentences now must be filed within one year from "the date on which the judgment became final by conclusion of direct review or the expiration of the time for seeking such review." See 28 U.S.C. § 2244(d)(1)(A).[2]

Here, the state courts' direct review of petitioner's conviction and sentence ended on March 16, 1996, when the Supreme Court of California denied the petition for review. However, the "time for seeking" direct review under 28 U.S.C. § 2244(d)(1)(A) includes the ninety-day period within which a petitioner can file a petition for a writ of certiorari from the United States Supreme Court under Supreme Court Rule 13, whether or not the petitioner actually files such a petition. See Bowen v. Roe, 188 F.3d 1157, 1159 (9th Cir. 1999). As a result, petitioner's "time for seeking" direct review expired, and the one-year limitations period

---

[2]In rare instances, not presented by the instant petition, the limitations period may run from a date later than the date on which the judgment became final. See U.S.C. § 2244(d)(1)(B)-(D).

2

1  for filing a federal habeas petition began, on June 16, 1996, ninety days after March 16, 1996.
2  One year later, on June 16, 1997, the limitations period expired. The instant petition is
3  deemed filed on August 11, 2004,[3] over seven years later. Consequently, absent tolling, the
4  instant petition is untimely.

5  Although the one-year limitations period is tolled for the "time during which a properly
6  filed application for State post-conviction or other collateral review with respect to the pertinent
7  judgment or claim is pending," see 28 U.S.C. § 2244(d)(2), petitioner's first state habeas
8  petition was not filed until November 17, 1997, five months after the limitations period had
9  expired. Because petitioner's first application for post-conviction or other collateral review
10 was filed in the state courts after the limitations period had already expired, petitioner is not
11 entitled to tolling pursuant to § 2244(d)(2).[4]  See Ferguson v. Palmateer, 321 F.3d 820, 823
12 (9th Cir. 2003) (holding "section 2244(d) does not permit the reinitiation of the limitations
13 period that has ended before the state petition was filed"). Athough equitable tolling is
14 available under "extraordinary circumstances," See Calderon v. United States District Court
15 (Beeler), 128 F.3d 1283, 1288 (9th Cir. 1997), no such circumstances are either asserted or
16 apparent in this case.

17 Petitioner argues that he should be excused from the AEDPA limitations period on
18 grounds of "actual innocence." In Schlup v. Delo, 513 U.S. 298, 316 & n.16 (1995), the United
19 States Supreme Court held that petitioners may avoid procedural bars to consideration of the
20 merits of their petitions if they can establish "actual innocence." This "actual innocence
21 gateway" has been applied after the enactment of AEDPA, see Griffin v. Johnson, 350 F.3d
22 956, 960, 963 (9th Cir. 2003), and, although the issue has not been resolved definitively by the

---

[3] See Saffold v. Newland, 250 F.3d 1262, 1268 (9th Cir. 2001) (deeming pro se federal habeas petition filed when prisoner signs petition and presumably gives it to prison authorities for mailing).

[4] Petitioner's December 31, 1996 federal habeas petition did not toll the statute pursuant to 28 U.S.C. § 2244(d)(2). See Duncan v. Walker, 533 U.S. 167, 181-182 (2001). Moreover, that petition was only pending for slightly more than two months. As a result, even if the limitations period were equitably tolled during that period, see id. (leaving open possibility of equitable tolling during pendency of federal petition), the limitations period would have expired in approximately September 1997, before the first state habeas petition was filed.

Ninth Circuit, such relief may well be available to avoid dismissal of a petition that otherwise would be time-barred by AEDPA, see Majoy v. Roe, 296 F.3d 770, 776-77 (9th Cir. 2002) (suggesting unavailability of actual innocence gateway would raise serious constitutional concerns; remanding to district court for determination of whether actual innocence established before deciding whether gateway available under AEDPA).  Nevertheless, even if a showing of actual innocence under Schlup does excuse the untimeliness of a habeas petition, petitioner here cannot make that showing.

To pass through the Schlup gateway, a petitioner must demonstrate a colorable claim of actual innocence, i.e., that the petitioner is, "innocent of the charge for which he is incarcerated." See Schlup, 513 U.S. at 321.  "Actual innocence" means factual innocence, not merely legal insufficiency.  See Bousley v. United States, 523 U.S. 614, 623-24 (1998).  It is not enough that the evidence shows the existence of reasonable doubt; petitioner must show "it is more likely than not that no 'reasonable juror' would have convicted him." See Schlup, 518 U.S. at 329.  A petitioner may pass through the Schlup gateway "if all the evidence, including the new evidence, makes it 'more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'"  See Gandarela v. Johnson, 286 F.3d 1080, 1086 (9th Cir. 2002) (quoting Schlup, 513 U.S. at 327).  In the vast majority of cases, such persuasive new evidence is unavailable, and, as a result, claims of actual innocence are rarely successful.  See Schlup, 518 U.S. at 324.

In the instant case, petitioner was convicted of first-degree murder of Robert Kelly ("Kelly"), a drug dealer in Pittsburg, California.[5]  At trial, petitioner did not dispute that he shot and killed Kelly, but rather argued that he acted in self-defense, or, alternatively, that he did not intend to kill Kelly.  Although petitioner did not testify at trial, the jury viewed a videotaped interview of petitioner by the police.  On the tape, petitioner stated that he and Kelly grew up together, that petitioner decided he wanted to deal drugs, and that he contacted Kelly in order to buy cocaine.  Petitioner explained that after his initial meeting with Kelly, he bought a pistol

---

[5]This factual background, and description of the evidence presented at trial, is taken from the California Court of Appeal's opinion, attached as Respondent's Exhibit 1.

4

for protection because he "didn't feel right," and that he loaded and armed himself with this pistol for his next meeting with Kelly. Petitioner stated that when they met again in Kelly's car for the drug sale, Kelly threw the drugs on the floor, and pulled out a gun. At one point in the police interview, petitioner stated that as he reached down to pick up the drugs, Kelly fired at him, and in response he fired at Kelly three times. Later in the interview, petitioner equivocated about who shot first, stating, "I can't even remember, man, if the first shot was mine or his." Petitioner stated that he fled the scene without knowing whether he had hit Kelly or not. A forensic expert testified that his examination of Kelly's gun revealed that it was jammed and did not fire.

The evidence on which petitioner relies to establish his actual innocence consists of his own testimony that he knew that Kelly had killed someone in the past, and a police report concerning that incident. The trial judge excluded this evidence at trial. As the evidence was not presented to the jury, it qualifies as "new" evidence within the meaning of Schlup. See Griffin v. Johnson, 350 F.3d at 961 (holding under Schlup, "new evidence" includes evidence that was offered at trial but excluded by the trial court).

According to petitioner, his testimony that he knew Kelly had killed someone in the past both supports his self-defense theory, in that such knowledge gave him reason to fear he was in imminent danger when Kelly pulled out his gun, and also negates his intent, in that it supports his statement that he brought the gun for protection, not in order to kill Kelly. Although petitioner's testimony is relevant as to these issues, it is far too weak to establish actual innocence in the context of the other evidence in the case.[6] First, as noted, the evidence is offered for the limited purpose of showing petitioner feared Kelly.[7] As such, this evidence adds little value to the existing evidence that petitioner had reason to fear Kelly, namely that

---

[6]The trial court excluded the evidence as more prejudicial than probative, pursuant to California Evidence Code § 352.

[7]The position petitioner took at trial is consistent with the instant petition. As the trial court observed, petitioner offered the evidence to show petitioner's state of mind, not to show Kelly was a violent person. (See Reporter's Transcript (attached to Petitioner "Notice of Lodgement") at 586-87.)

Kelly was a drug dealer who had threatened petitioner in the past,[8] and, of particular significance, that Kelly had pulled a gun on petitioner right before petitioner shot him.

Moreover, if petitioner had testified, even about his state of mind, he would not have made a credible witness. He had two prior convictions for robbery, and two prior convictions for attempted robbery. Additionally, he had provided two dramatically different, and unreconcilable, stories to the police. The day after admitting to the shooting, on videotape,[9] he returned to the police station and claimed he was not at the scene and did not shoot Kelly. Further, the physical evidence contradicted petitioner's assertion that Kelly fired at him, as there was no bullet at the scene from Kelly's gun, and a forensic expert testified that Kelly's gun jammed and did not fire.[10] Finally, petitioner's girlfriend testified that, shortly after the incident, petitioner showed her how he put the gun to Kelly's head and shot him three times at close range, conduct inconsistent with petitioner's videotaped statement that he didn't intend to kill Kelly or that he acted on the spur of the moment in self-defense and was unsure whether he actually had hit him.

Given the state of the evidence as a whole, petitioner's new evidence would have to be far more persuasive than his own testimony that he was aware of Kelly's violent past,

---

[8] In his videotaped interview with the police, petitioner stated that at the time petitioner first told Kelly he wanted to sell drugs, Kelly was accompanied by a cohort who began "flexing on" petitioner; that Kelly warned petitioner not to sell in Pittsburg because he had the town "sewn up"; that Kelly told petitioner that petitioner now worked for him and "there ain't no getting out"; and that Kelly spat in petitioner's ear.

[9] As discussed above, petitioner's videotaped interview itself contained inconsistencies.

[10] As noted, petitioner, in his videotaped interview, stated that Kelly not only pulled a gun on him, but that he fired it as well.

testimony that was both self-serving and added little to the other evidence that petitioner had reason to fear Kelly. In sum, petitioner has failed to demonstrate that no reasonable juror would have convicted petitioner had the jury known of the new evidence, and, as a result, petitioner does not pass through the "actual innocence" gateway under <u>Schlup</u>. Accordingly, the untimeliness of the instant petition under AEDPA is not excused.

## CONCLUSION

For the foregoing reasons, respondent's motion to dismiss is GRANTED and the petition for a writ of habeas corpus is DISMISSED.

The Clerk shall close the file and terminate Docket Number 11.

**IT IS SO ORDERED.**

Dated: August 25, 2005

MAXINE M. CHESNEY
United States District Judge